# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **P.P.**

**No. 18-1050** (Upshur County 18-JA-01)

**FILED**

**May 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.P.-1, by counsel Steven B. Nanners, appeals the Circuit Court of Upshur County's November 5, 2018, order terminating her parental rights to P.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Hunter D. Simmons, filed a response on behalf of the child, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent and terminating her parental rights without first granting her request for an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parents have an extensive and egregious history of Child Protective Services ("CPS") intervention dating back over a decade. In 2007, the parents gave birth to their first child together, C.P.-2. Shortly thereafter, the father physically abused then-ten-week-old C.P.-2 such that the child suffered two skull fractures, a subdural hematoma, two rib fractures, fingerprint bruising to the forehead and top of the head, and bruising to the back. C.P.-2's injuries were so severe that he required a partial lobotomy to relieve pressure in the skull, leaving him permanently impaired. The DHHR filed a child abuse and neglect petition against the parents, which ultimately resulted in the involuntary termination of petitioner's parental rights. The father

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Because petitioner and a child discussed in this matter share the same initials, we will refer to them as C.P.-1 and C.P.-2, respectively, throughout this memorandum decision.

voluntarily relinquished his parental rights to C.P.-2, pled guilty to child abuse resulting in bodily injury, and was sentenced to not less than one nor more than five years of incarceration.

Following the father's release from incarceration in 2010, he and petitioner reunited and had two more children together. The DHHR filed child abuse and neglect petitions against the parents based upon their prior abuse. Petitioner's parental rights to those children were terminated in 2011 and 2013 after the circuit court found that she failed to acknowledge the abuse perpetrated against C.P.-2 or remedy the circumstances of abuse. Petitioner's parental rights to three children from other relationships were also terminated at various times during the proceedings, for a total of six children by that time.

Petitioner and the father conceived their fourth child together, P.P., who was born in December of 2017. P.P. is the only child at issue on appeal. The DHHR filed the instant child abuse and neglect petition against the parents in January of 2018, alleging aggravated circumstances due to their continued failure to remedy the circumstances that resulted in the termination of their parental rights. Petitioner waived her preliminary hearing.

In August of 2018, the circuit court held the adjudicatory hearing over the course of two days. Testimony established that the parents' home was clean and appropriate for the child, and that the parents were employed. Further, petitioner appeared concerned about the child, called the DHHR often to inquire about the child's wellbeing, and provided care items for the child. However, during the investigation following P.P.'s birth, petitioner denied responsibility for C.P.-2's injuries and expressed confusion as to why her parental rights to her six older children had been terminated. Indeed, petitioner testified that she was treated unfairly by the DHHR in her prior cases and that her parental rights should not have been terminated. Petitioner denied having stated that the father was "railroaded" into pleading guilty in 2007, but continued to claim that she did not believe that he had intentionally hurt C.P.-2. In fact, the guardian engaged petitioner in a discussion of the same as follows:

[Guardian]:    If you hit your head – I mean, the testimony here was, he was in the father's arms and when he sat down, he accidentally hit his head on the arm; how does that break your ribs?

[Petitioner]:    I don't know.

[Guardian]:    Okay. But you don't think it was anything on [the father's] part to harm him?

[Petitioner]:    I don't believe so.

Petitioner also acknowledged that the DHHR provided services to the family from 2005 through 2015, but testified that they were not helpful. She did, however, pursue domestic violence counseling following an incident in 2016 wherein the father was convicted of domestic battery second offense for his abuse against petitioner. After hearing evidence, the circuit court found that the parents remained untruthful nearly eleven years later regarding the injuries sustained by C.P.-2 and further found that they

2

failed to demonstrate that they have remedied the problems which led to the prior involuntary terminations sufficient to parent a subsequent-born child as they both continue to fail to acknowledge the prior abuse and neglect of their child and fail to accept any responsibility for the severe physical injury inflicted upon their son.

Accordingly, the circuit court determined that P.P. had been abused and neglected by her parents due to their failure to correct the conditions that led to the prior termination of their parental rights and adjudicated them as abusing parents.

A dispositional hearing was held in October of 2018. The DHHR recommended termination of the parents' parental rights given their failure to acknowledge the abuse perpetrated against C.P.-2 and their resulting inability to address the conditions of abuse that led to the instant petition's filing. Both parents requested post-adjudicatory improvement periods and testified that they would comply with the terms and conditions of the same. After hearing evidence, the circuit court denied the parents' request for improvement periods and terminated their parental rights. In making its findings, the circuit court stated that the facts that the parents were employed, maintained clean and appropriate housing, and provided for the child were not dispositive issues in this matter. Rather, the issues in the prior abuse and neglect proceedings, and which ultimately led to the instant petition's filing, were domestic violence and the continued denial of severe physical abuse of C.P.-2. The circuit court found that the remedial measures argued by the parents, such as domestic violence counseling and related courses, failed to address the issues in this case. Moreover, the father was convicted of a domestic violence-related incident against petitioner as recently as 2016, yet she continued her relationship with him. Based upon the parents' failure to acknowledge the abuse perpetrated upon C.P.-2, the court opined that they were unable to "remedy a problem that they continue to deny exists." Ultimately, the circuit court determined that there was no reasonable likelihood that the parents could correct the conditions of abuse in the near future and that termination of their parental rights was in the P.P.'s best interest. It is from the November 5, 2018, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply

---

[2]The child was placed in the care of a foster family and the permanency plan is adoption.

because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent. In support, petitioner cites to Syllabus Point 4 of *In the Matter of George Glen B., Jr.*, 205 W. Va. 435, 518 S.E.2d 863 (1999), wherein this Court held that

> [w]hen an abuse and neglect petition is brought based solely upon a previous involuntary termination of parental rights to a sibling pursuant to West Virginia Code § [49-4-605(a)(3)], prior to the lower court's making any disposition regarding the petition, it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s).

While petitioner concedes that the DHHR was required to file the instant petition based upon her previous terminations of parental rights to her older children[3], she argues that the evidence established that she had taken significant steps to remedy the circumstances of abuse that led to the termination of her parental rights to her older children. Specifically, petitioner argues that testimony established that her house was clean; P.P. was fed and provided for; there were no drug issues in the home; she was employed; she was an active participant in the proceedings; she called the DHHR frequently to inquire about the child's wellbeing; and she completed domestic violence victim counseling prior to the petition's filing. Accordingly, petitioner argues that the circuit court erred in finding that she was an abusing parent given that she had taken these significant steps in remedying the circumstances which led to the termination of her parental rights in prior proceedings. We disagree.

We have previously noted as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546,

---

[3]Pursuant to West Virginia Code § 49-4-605(a)(3), the DHHR shall file or join in a petition where the parent's parental rights to another child have previously been involuntarily terminated.

4

759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § [49-4-605(a)] is present."[4] *In re Kyiah P.*, 213 W. Va. 424, 427, 582 S.E.2d 871, 874 (2003) (quoting *George Glen B.*, 205 W. Va. at 437, 518 S.E.2d at 865, syl. pt. 2, in part.).

Pursuant to West Virginia Code § 49-1-201,

"[an a]bused child" means: (1) [a] child whose health or welfare is being harmed or threatened by: (A) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include an injury to the child as a result of excessive corporal punishment.

We first note that the record demonstrates that the circuit court allowed for the development of evidence regarding petitioner's prior terminations of parental rights pursuant to *George Glen B.* Here, it is uncontroverted that petitioner's parental rights to C.P.-2 were previously terminated following the extremely violent abuse inflicted upon that child, resulting in the child having to undergo a partial lobotomy and sustaining a permanent disability. That instance of termination was based, in part, upon petitioner's refusal to acknowledge that the abuse was inflicted by the father. At each subsequent dispositional hearing, petitioner's parental rights to five other children were terminated based upon her continued insistence that the father did not intentionally harm C.P.-2. Even now, nearly eleven years later, petitioner maintains this stance. Indeed, at the adjudicatory hearing, despite the fact that petitioner was unable to provide an explanation for C.P.-2's injuries, she insisted that the father did not harm the child. Petitioner's argument that she completed counseling, maintained a suitable home, was employed, and cared for the child do nothing to prove that she has remedied the true problem of abuse. Rather, petitioner's continued denial of the abuse overwhelmingly demonstrates that she failed to remedy the circumstances which led to the prior termination of her parental rights. As such, the circuit court rightfully found that petitioner's continued denial rendered P.P. an abused and neglected child, and we find no error in the circuit court's decision to adjudicate petitioner as an abusing parent.

Petitioner also argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. According to petitioner, she actively participated in the proceedings, frequently called the DHHR, and provided care items to the child throughout the proceedings, all of which demonstrated that she was likely to participate in an improvement period. We find no merit in petitioner's argument.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement

---

[4]The list of factors outlined in West Virginia Code § 49-4-605(a) includes when "the parental rights of the parent to another child have been terminated involuntarily."

period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Contrary to petitioner's argument, her participation in the proceedings and frequent calls to the DHHR do not demonstrate that she was likely to fully participate in an improvement period. As established above, petitioner continues to deny that the father abused C.P.-2, despite his resulting conviction and incarceration. Importantly, we have previously noted that

> [f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *Charity H.*, 215 W. Va. at 217, 599 S.E.2d at 640). Accordingly, petitioner's failure to acknowledge the existence of the abuse renders the circumstances of abuse untreatable and an improvement period an exercise in futility at P.P.'s expense. Therefore, we find no error in the circuit court's decision to deny petitioner an improvement period.

We further find no error in the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. "No reasonable likelihood that conditions of neglect or abuse can be substantially corrected" means that "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." W. Va. Code § 49-4-604(c).

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect. During the underlying proceedings, petitioner admitted that she was provided services, such as parenting and adult life skills classes, during her prior child abuse and neglect proceedings. However, petitioner testified that these classes did not help her, and she continues to deny that the father abused C.P.-2 and remains in a relationship with him. Although petitioner claims that she maintains housing and employment, we again note that these actions do not prove that she has remedied the conditions of abuse and further note that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citing syl. pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Given petitioner's blatant denial of prior abuse, we agree with the circuit court's decision that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future and that termination was necessary for the welfare of the child. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

6

For these reasons, we find no error in the decision of the circuit court, and its November 5, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: May 24, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

7